NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent, *v.* FRANK J. MOORE, Appellant.

*N. Y. C. & H. R. R. R. Co.* v. *Moore*, 137 App. Div. 461, affirmed.
(Argued November 29, 1911; decided December 12, 1911.)

APPEAL from a judgment entered April 11, 1910, upon an order of the Appellate Division of the Supreme Court

in the fourth judicial department, overruling defendant's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for plaintiff upon the verdict.

*Eugene Van Voorhis* for appellant.

*Daniel M. Beach* for respondent.

HAIGHT, J.   This action was brought to recover the possession of a parcel of land situate in the town of Irondequoit, county of Monroe, state of New York, adjoining the plaintiff's right of way, fifty feet in breadth and about two hundred and sixty feet in length.   The plaintiff's title is traced back to a deed executed by the Duke of Cumberland and others to one John Hornby, dated September 1st, 1815, conveying two parcels of land; the first was located in the north part of township No. 14, 7th range, now Irondequoit, bounded on the east by Irondequoit bay, on the north by Lake Ontario and on the west by lot 22, in that township, containing 494.56 acres.   The other parcel conveyed was called the sand bar adjoining, lying between the bay and the lake, containing 15.17 acres.   In 1819, Hornby conveyed to Sylvester Woodman a portion of the premises adjoining the sand bar, bounded as follows: "Beginning at the northeast corner of said lot; running thence westerly along north line of lot, being the Lake Shore 100 rods; then south parallel with the west line of lot so far that a line drawn from thence easterly parallel with the south line to the east line of lot, being the shore of Gerundegut (now Irondequoit) Bay, and thence northerly along said east line of lot to the place of beginning, will contain one hundred acres and no more."   The plaintiff claims that the premises thus conveyed to Woodman cover the land in question, and traces its title thereto through mesne conveyances from Woodman.

In 1825 John Hornby conveyed to Roger Bronson a parcel of land described as lying in township No. 14, 7th range, and described as follows: "Being three undivided

fourth parts of the Sand Bar, so called, lying at the mouth of Irondequoit Bay and in the west side thereof, containing about fifteen acres more or less, bounded on the west by the east line of a tract of one hundred acres sold to Sylvester Woodman." By a subsequent deed the remaining one-fourth interest was conveyed to Bronson, and the defendant claims the premises in question through mesne conveyances from Bronson. It is thus apparent that, in view of the fact that the defendant's title is bounded upon the west by the east line of Wood-man's title, the question to be determined is as to whether Woodman's deed covered the lands in question.

It appears that at about the time of the conveyance by Hornby to Woodman in 1819, E. Johnson made a survey of these lands. Whether he made a map at that time of the land embraced in the conveyance does not clearly appear from the evidence. We have, however, a copy of a map introduced in evidence as Exhibit 20, the original of which is on file in the Guarantee Company's office, bearing the name of Elisha Johnson, purporting to describe the 494.56 acre lot conveyed to Hornby, as well as the 100 acre lot conveyed by him to Woodman. Upon that map there appears at the mouth of Irondequoit bay on the western shore thereof the letter " A " upon a body of land extending some distance into the bay, and on the north side of which there is a narrow strip of water extending north around the mainland, forming a cove, separating the mainland from the sand bar extending out into the lake and bay, which is the land sold by Hornby to Bronson through whom the defendant claims title. We then have introduced in evidence Johnson's field notes of a survey made by him of the tract conveyed to Woodman. It is as follows: "Undivided lot lying in township No. 14, 7th Range, and at the intersection of the Irondequoit Bay with Lake Ontario. 1st. Lay off one hundred acres agreeable to I. Woodman's deed. Begin-ning at the intersection of Bay and Lake Ontario and at the neck of the bar at A on map; thence north 67° west nine chains and seventy five links; thence north 82° west

fifteen chains and twenty-five links along the lake."
Referring to map, Exhibit 20, and commencing at the
point marked by the letter "A" thereon, thence running
as specified in his field notes, the line would pass along
the northern shore of the land as indicated in that map
to the end of the cove; thence through the neck of the
sand bar as there indicated out to the edge of the lake
and thence by the second course along the lake shore;
the two courses making one hundred rods from the start-
ing point. It would thus appear that he treated this por-
tion of land marked as the intersection of the bay with
the lake, or as the mouth of the bay, the cove and the
sand bar then being north and westerly of the starting
point. The field notes further proceed to give the course
and distances surrounding the hundred acre lot conveyed
to Woodman, reaching a point on the south line of the
lot line, being the eastern shore of Irondequoit bay;
thence north along that shore to the place of beginning.
But instead of its being in fact the western line of Ironde-
quoit bay at the water's edge it was a zigzag line on the
top of the high bank, starting at a point south 290.4 feet
distant from the water line. As this line approaches the
lake it turns eastward, running north 32° east five chains
twenty links and thence north 50° east five chains fifty-
three links to the place of beginning.

On behalf of the defendant the contention is that the
line disclosed by these field notes became the eastern
boundary of the Woodman property and that, conse-
quently, his land was bounded upon the west by that
line. Neither the trial judge nor the Appellate Division
has adopted this claim. Instead, they have approved the
contention of the plaintiff that the express language of
the deed carried the title "to the line of the lot, being
the shore of Irondequoit Bay," and, therefore, the shore
line instead of the surveyed line became the boundary
line of its property. This contention, we think, is unan-
swerable. It must be borne in mind that, at the time
the survey was made, the bank upon the shore in many
places was nearly perpendicular and accessible with diffi-

culty. And it is quite possible that the surveyor, in running the line as he did upon the brink of the bank, intended it as a set off or base line and made the measurements for the purpose of obtaining the quantity of land required to be conveyed by the deed. If we are correct in this conclusion it would necessarily follow that the title to the lands lying east of the surveyed line and west of the bay line, which were described as uplands covered with timber, vested in Woodman under his deed and excludes the defendant's lands from being any part thereof. This, we think, is made clear by the original map that was introduced in evidence by the defendant as Exhibit 27. It was made by F. J. M. Cornell, surveyor, in March, 1860, following the field notes of Johnson made in 1819. This map shows that the Johnson survey began at a point upon the mainland south of the cove and south of the old sand bar, running thence along the line of land south of the cove and across the sand bar to the lake front, as already indicated in the Johnson field notes. The map also shows the lake line, the sand bar and cove as they existed in 1819; also the lake front as it existed in 1860, with the remains of the bridge which was constructed in 1855. At that time the cove and sand bar on the north had disappeared and the shore line of the lake then commenced at the bridge.

It appears from the testimony of the defendant's witnesses that formerly the Woodman road ran out upon the old sand bar, but that in 1853 or 1854 the neck of the sand bar was washed away during a heavy storm, and that in 1855 a bridge about three hundred feet in length was constructed by the towns of Irondequoit and Webster, whose line it crossed, for the purpose of affording a passage over on to the remaining part of the sand bar, but that in a year or so later the bridge itself was washed away; the sand bar also was washed farther into the bay and a new bar formed at the place where the bridge was constructed, and that the lake had encroached upon the highlands for a considerable distance. It is thus apparent from the defendant's own showing that the old

sand bar as it existed in 1819 has disappeared, and that the mainland abutting thereon has been washed away for a distance more than sufficient to cover any claim that the plaintiff has made to the beach as it now exists.

As to the other questions involved in this appeal, we concur in the opinion of ROBSON, J., below.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, VANN, HISCOCK, CHASE and COLLIN, JJ., concur.

Judgment affirmed.